## E. FAXON BISHOP, ET AL., *v.* HAROLD C. HILL, TAX ASSESSOR FIRST TAXATION DIVISION, TERRITORY OF HAWAII.

### No. 2184.

SUBMITTED NOVEMBER 1, 1934.                    DECIDED MARCH 28, 1935.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action authorized by section 1444, R. L. 1925 (now § 571, R. L. 1935), to recover money paid under protest. On October 13, 1932, the plaintiffs, trustees of the estate of Bernice P. Bishop, deceased, filed with the defendant, the tax assessor for the first taxation division, a business excise tax return as required by Act 42, 2d Sp. S. L. 1932, showing the income, expenses and deductions of the estate for the period from July 1, 1931, to June 30, 1932, but claiming nonliability to taxation under said Act. On October 14, 1933, another return was filed covering the period from July 1, 1932, to June 30, 1933, accompanied by a similar claim of nonliability. On May 29, 1934, the defendant denied the plaintiffs' claims and demanded of them the sums he had assessed against the estate, being $2,228.65 for the fiscal year ending June 30, 1932, and $3,879.34 for the fiscal year ending June 30, 1933. The plaintiffs, on June 12, 1934, paid the aggregate sum of $6,107.99 under protest. The claim of nonliability and the protest against payment were based on the grounds that the trust created by the will of Bernice P. Bishop is an eleemosynary or charitable trust and that the trustees under said will are not doing business in the Territory of Hawaii within the spirit, meaning and intent of Act 42 above referred to.

On June 23, 1934, which was within the period prescribed by section 1444, supra, the present action was instituted. Defendant filed a general denial. The court below trying the case jury-waived rendered a decision and judgment against the plaintiffs and in favor of the defendant and the case is here on the plaintiffs' exceptions.

The nature of the trust is not disputed nor is the pow-

er of the legislature to impose a tax upon charitable trusts denied. The primary question, therefore, is whether such trusts come within the legislative intent as expressed in Act 42. Sections 1 and 2 of the Act are, respectively, as follows:

"Section 1. Excise tax. There shall be levied and assessed each year upon each person doing business within the Territory, except as otherwise in this Act provided, an excise tax in the manner and at the rate hereinafter provided, which tax shall be deemed to be levied for the doing of such business for the taxable year preceding the one in which the tax is regularly assessed. Such tax shall be in addition to any license or other fee prescribed by any other law."

"Section 2. Definitions. 'Person,' within the meaning of this Act, shall include every individual, partnership, firm, society, unincorporated association, group, hui, joint stock company, corporation, and trust estate, whether said persons are doing business for themselves or in a fiduciary capacity, and whether the individuals are residents or non-residents of the Territory of Hawaii and whether the corporation or other association is created and/or organized under the laws of the Territory of Hawaii or of another jurisdiction. The term 'person,' however, shall not include public utility corporations in so far as their public utility business is concerned, insurance companies, banks and persons receiving salaries and wage earners, so far as their salaries or wages are concerned. 'Doing business' within the meaning of this Act shall include the management or dealing with property, real, personal or intangible, and any pursuit, trade, industry, profession, employment, enterprise, vocation, agency, calling or occupation of whatever description or any other activity relating to or connected with property, trade, industry, commercial or financial affairs or business in any form whatsoever, irrespec-

tive of where the products of such activities or the commodities dealt in are sold and irrespective of whether the proceeds of sales or business are transmitted or not to the Territory. The foregoing enumeration of what is to be included in the term 'doing business' is not to be considered exclusive of any other meaning attributable thereto. The following, however, shall not be considered doing business: (a) The management of, or dealing with, or activities in connection with, property where such property, while so managed or dealt with, or while such activities are carried on in connection therewith, is exempt from property taxes; (b) merely organizing or holding meetings in the Territory by stockholders of the corporation or by persons constituting a business firm. 'Taxable year,' as used in this Act, shall mean taxable year as defined by the territorial income tax laws."

It is evident that the term "each person," as it is used in section 1 of the Act, was intended by the legislature to include charitable as well as other kinds of trusts. This appears in that portion of section 2 which defines "person." It is there stated that "person" shall include "every * * * trust estate." The exceptions specifically mentioned in the statute are the only limitation placed upon the definition of "person." Trust estates created for charitable purposes are not included, which emphasizes the intention of the legislature to include them in the definition.

It is contended, however, that the Bishop Estate is a charitable trust as distinguished from a business conducted for profit and therefore is not within the definition of "doing business," as that term is used in the statute. It is obvious that the legislature included within its definition of "doing business" the management of or dealing with all kinds of property, whether real, personal or intangible, and also included any activity relating to or connected

with property and in addition included any activity related to or connected with financial affairs or business in any form whatsoever.

The only witness who testified in regard to the activities of the trustees in their management of the estate was George M. Collins, one of its trustees. It is shown by his testimony that the estate maintains an administrative office in Honolulu with a staff of thirty employees, exclusive of teachers and others employed at the Kamehameha schools, and that it also employs three agents on the other islands for the purpose of supervising lands and collecting rents; that the income of the estate is derived from rents on its real property, interest on bonds and real estate mortgages, fees, firewood sales and "miscellaneous," which includes "little items of earnings;" that the estate also engages in the selling of real estate; that its gross income from July 1, 1931, to June 30, 1932, was $618,021.52 (the tax return covering the period from July 1, 1932, to June 30, 1933, which is an exhibit in this case, shows a gross income of $564,186.96); that the entire net income except for a small surplus which, when there is one, is expended for other purposes beneficial to the estate, is used for the maintenance of the Kamehameha schools (this use being in accordance with the terms of the trust created by the will of Bernice P. Bishop), and that the surplus for the years 1932 and 1933 was approximately $80,000, a part of which was used to discharge certain obligations of the estate and a part invested for the purpose of increasing the income.

There can be no doubt from this testimony, which is undisputed, that the plaintiffs are, as trustees of the Bishop Estate, managing and dealing in property both real and personal, and that their activities are connected with financial affairs. They rent and sell real estate; they invest in bonds and real estate mortgages and collect the in-

terest; they sell firewood; they maintain an administrative office with a staff of thirty assistants; they employ agents who supervise the lands of the estate and collect rents; they realized in one year a gross income of over $600,000 and in another year of more than $500,000. This clearly brings them within the statutory definition of a person doing business in the Territory.

Notwithstanding the comprehensive definition of "doing business" the plaintiffs make the argument that sections 3 and 4 of the Act are incompatible with any type of business except that conducted for profit and therefore it must have been the legislative intent not to include a business the income from which is devoted to a charitable purpose. We think there is no merit in this argument. Section 3, which relates to the manner of determining the tax, and section 4, which enumerates the elements of operating costs, are as applicable to a trust estate engaged in business for a charitable purpose as to a trust estate engaged in business for profit. Moreover, if it had been the intention of the legislature to include only persons whose business was conducted for profit and to exclude those whose business was conducted for charitable purposes it is hardly conceivable that such intent would have been left to mere inference and surmise instead of being clearly expressed in the definition of "doing business."

It is finally contended by the plaintiffs that in any event the Bishop Estate is exempt from the tax in question. In support of this contention our attention is called to that portion of section 1 of Act 42, which reads as follows: "There shall be levied and assessed each year upon each person doing business within the Territory, except as otherwise in this Act provided, an excise tax in the manner and at the rate hereinafter provided," and to the following portion of section 6 of said Act, which reads: "All pro-

visions of territorial law, not inapplicable and not incon-
sistent with the provisions of this Act, with respect to the
payment or collection of taxes and the powers and duties
of the tax commissioner and/or treasurer of the Territory
and/or tax collectors, in connection therewith * * * and
with respect to the rights and liabilities of taxpayers and
other persons in connection with any matters dealt with
by such income tax laws, are hereby made applicable to
the taxes and the collection of taxes imposed under this
Act," and also to section 1 of Act 44 (passed at the sec-
ond special session of 1932), which reads as follows:
"There shall be assessed, levied, collected and paid for
each taxable year a tax of seven and one-half per cent
(7½%) upon the net income of every corporation doing
business in or receiving or deriving income from sources
within the Territory; provided, however, that all banks
and insurance companies exclusively taxable under the
provisions of other laws, and also all corporations, com-
panies, associations or trusts conducted solely for chari-
table, religious, educational or scientific purposes, includ-
ing fraternal beneficiary societies, shall not be taxable
under this Act."

The argument is then made that the phrase "except
as otherwise provided," as it appears in section 1 of Act
42, refers to section 6 of the Act; therefore this latter sec-
tion by necessary implication incorporates into Act 42
the provisions of section 1 of Act 44 and that in order to
ascertain the power and duties of the tax commissioner, the
treasurer of the Territory and the tax collectors, and the
rights and liabilities of taxpayers in connection with the
business excise tax recourse must be had to Act 44. All
this may be conceded without detriment to the right of the
Territory to collect a business excise tax from the trustees
of a charitable trust or without affecting their obligation
to pay such tax. All that is done by Act 44, so far as these

trusts are concerned, is to exempt them from the payment of a tax on their income. Section 3 of Act 42 provides as the basis for the computation of the excise tax net taxable income and operating costs. The only result of the incorporation of the pertinent provisions of Act 44 into Act 42 was to exclude the first item and limit the computation to the second item. The possibility that such a situation might arise was evidently within the contemplation of the legislature and its effect was declared in the following portion of section 7 of the Act: "If for any reason any items or portions thereof included in the basis for the computation of the tax against any particular person cannot legally be so included therein, the tax payable by such person shall be computed upon the basis of those items and/or portions thereof which can legally be included in said basis."

It appears from the two tax returns filed by the trustees, together with other facts in the record, that the income of the estate was not included in estimating the excise tax but that the sole basis of the computation was the operating costs. The total taxable amount of the operating expenses which was properly considered in calculating the taxes imposed upon the plaintiffs was $305,400.25. Two per cent of this amount is $6,108, or one cent more than the sum paid by the trustees.

For the foregoing reasons we think the tax imposed upon and collected from the plaintiffs was authorized. The exceptions are overruled.

*Robertson & Castle* for plaintiffs.

*M. E.. Winn,* First Deputy Attorney General, for defendant.